**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

FLORIDA CONVALESCENT CENTERS,
INC., et al.,

    Plaintiffs,

vs.                                                              CASE NO. 8:04-CV-02584-T-17TGW

MICHAEL O. LEAVITT, in his official capacity as
Secretary, United States Department of Health and
Human Services,

    Defendant.
_____/

**ORDER**

    This cause is before the Court on Defendant's Motion to Dismiss, filed on April 4, 2005 (Dkt. 26-1), and response thereto, filed April 27, 2005 (Dkt. 29).

**BACKGROUND**

    During the fiscal year 1997 (Jan. 1, 1997 – Dec. 31, 1997) ("FY 1997"), Florida Convalescent Centers, Inc. ("FCCI") operated twelve skilled nursing facilities (collectively, the "Providers"), and provided extended care services under the federal Medicare program. Under the Provider Agreement between the Secretary of the United States Department of Health and Human Services (the "Secretary" or "HHS") and FCCI, each Provider was assigned a separate Provider Number that entitled it to reimbursement for cost incurred while providing for the contracted Medicare services (Dkt. 26-2, Ex. 1[1]). During FY 1997, FCCI subcontracted with a third party for therapy management on behalf of its Providers, and sought reimbursement for cost incurred through its fiscal intermediary, First Cost Service Options, Inc. (the "Intermediary") (A.R. 204-208).

    On April 7, 1999, Integrated Health Services, Inc. ("IHS") entered into separate Provider Agreements with the Secretary on the same Providers who were then operated by FCCI in order to participate in the Medicare program (A.R. 933-944). Shortly after, on April 16, 1999, IHS entered into various leases with Palm Garden Healthcare, Inc. ("PGHI"), owner of the Providers'

---

[1] This Court cites the record once, even if it appears more than once in the three-volume Administrative Record.

properties/buildings, in order to operate the Providers (A.R. 314-380).  The IHS leases became effective on August 1, 1999.  Id.  Thereafter, IHS began to operate those Providers under the same Provider Numbers originally assigned to FCCI.  However, on February 2, 2000, IHS, along with the Providers it operated and those at issue here, filed for bankruptcy and commenced the proceeding in the United States Bankruptcy Court for the District of Delaware.  In re Integrated Health Servs., Inc., 289 B.R. 32 (Bankr. D. Del. 2003).

Meanwhile, having reviewed the Providers' cost reports submitted for FY 1997, the Intermediary issued Notice of Program Reimbursements ("NPRs") to the Providers at the end of September 1999, and declined to allow the therapy management cost reimbursement (See A.R. Volume I).  On March 14, 2000, FCCI, together and on behalf of each individual Provider, filed a timely group appeal to the Provider Reimbursement Review Board (the "PRRB" or "Board") (A.R. 62), the administrative body established to hear reimbursement disputes between a Medicare provider and its intermediary.  42 U.S.C. § 1395oo(a).  PRRB designated the appeal as the Florida Convalescent Centers FY 1997 Therapy Management Group and assigned Case No. 00-2151G.  On March 26, 2002, the Intermediary and the Providers entered into a Settlement Agreement in an attempt to administratively resolve the appeal before PRRB (A.R. 156-160).  On June 3, 2002, due to the Settlement Agreement, FCCI petitioned to withdraw its appeal before PRRB (A.R. 1005); the Board granted its request on June 6, 2002 (A.R. 162).

On June 14, 2002, IHS, the Providers, the HHS, and the Center for Medicare and Medicaid Services ("CMS"), which implements the Medicare program (collectively, the "Parties"), entered into a Stipulation in order to resolve the pending bankruptcy proceeding (A.R. 388).  Specifically, that Stipulation required the Parties to sign a Mutual Release discharging each other of any future claim and liability (A.R. 974-984).  More importantly, the Stipulation identified each of the Providers by their Provider Number, which the Providers were set to be transferred to the new operators, pending the Bankruptcy Court's approval (A.R. 389-390).  On June 24, 2002, the Bankruptcy Court approved and adopted the Stipulation in its entirety and transferred the Providers to new operators (A.R. 400-403).

On November 29, 2002, FCCI petitioned PRRB to reinstate its appeal (A.R. 987).  On May 2, 2003, PRRB reinstated FCCI's appeal because "the agreed upon settlement has not yet been concluded" (A.R. 164).  Subsequently, on September 5, 2003, PRRB held a hearing regarding FCCI's appeal.  On September 30, 2004, PRRB rendered a two-part decision on

FCCI's appeal as follows: 1) "The Intermediary's adjustments to therapy management costs were improper and are reversed;" and 2) "The Board lacks jurisdiction of [sic] whether the Providers or their successor entities should be paid under a settlement agreement reversing the Intermediary's disallowances" (Dkt. 1-3 at 5-6).

On November 23, 2004, the CMS Administrator notified FCCI that it declined to review PRRB's decision on the appeal (A.R. 1-2).  On November 29, 2004, FCCI filed this instant action in this Court seeking judicial review of PRRB's decision (Dkt. 1-1).  The Plaintiffs originally named the Intermediary and its parent corporation, Blue Cross Blue Shield Association ("BCBSA"), and Tommy Thompson, in his official capacity as Secretary of the United States Department of Health and Human Services, as Defendants in this case.  Id.  Pursuant to this Court's Order, dated April 28, 2005, the Intermediary and BCBSA were dismissed as defendants in this case, and Michael O. Leavitt, the current Secretary of the United States Department of Health and Human Services, substituted Tommy Thompson, the former Secretary, as the sole defendant in this Medicare reimbursement dispute (Dkt. 36).

## STANDARD OF REVIEW

Defendant's Motion to Dismiss is based in part on Fed. R. Civ. P. 12(b)(1) due to this Court's alleged lack of subject matter jurisdiction, and in part on Fed. R. Civ. P. 12(b)(6) due to the Plaintiffs' alleged failure to state a claim upon which relief can be granted.  In other words, a motion to dismiss pursuant to Rule 12(b)(1) challenges a court's authority to resolve the dispute at issue, and a motion to dismiss pursuant to Rule 12(b)(6) tests the complaint's adequacy to determine whether it sets forth sufficient allegations to establish a claim for relief.

Challenges to subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure come in two forms: facial and factual challenges.  Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  Facial challenges are limited to the four corners of the complaint while factual challenges permit investigation of matters outside the pleadings themselves.  Garcia v. Copenhaver, Bell, and Assocs., 104 F.3d 1256, 1260-61 (11th Cir. 1997).  "Facial attacks on the complaint [require] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Lawrence, 919 F.2d at 1529 (11th Cir. 1990).  A facial attack affords a plaintiff safeguards similar to those provided in a Rule 12(b)(6) motion.  Id.  If the jurisdictional allegations in the complaint are sufficient, the complaint stands.

Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981).  Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings.  Therefore, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Lawrence, 919 F.2d at 1529 (11th Cir. 1990).

A motion to dismiss will be granted only where it is clear that no set of facts consistent with the allegations could provide a basis for relief.  "It is well established that a complaint should not be dismissed for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6) 'unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.' " Bradberry v. Pinellas County, 789 F.2d 1513, 1515 (11th Cir. 1986) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  For purposes of a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all facts alleged by the plaintiff.  St. Joseph's Hospital, Inc. v. Hospital Corp. of America, 795 F.2d 948 (11th Cir. 1986).  The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims."  Little v. City of North Miami, 805 F.2d 962, 965 (11th Cir. 1986) (citation omitted).

## DISCUSSION

On September 30, 2004, PRRB rendered a two-part decision on the Plaintiffs' appeal for reimbursement of the Providers' Medicare service costs incurred in FY 1997.  In part one of that decision, PRRB decided substantively in favor of the Plaintiffs on the reimbursement issue.  However, in part two of that decision, the Board decided that it was without jurisdiction to determine whether the Providers or their successors were entitled to the reversal of the disallowances (A.R. 8-14).

The Defendant does not seek to challenge part one of the PRRB's decision, but disagrees with the Plaintiffs' assertion that this Court has proper subject matter jurisdiction to order the reversal of part two of the PRRB's decision.  The Defendant maintains that this Court has only limited jurisdiction in reviewing PRRB's decision and cannot reach the merit of the reimbursement dispute.  In other words, the Defendant argues that this Court can only rule on whether the Board's jurisdictional decision was correct.  Also, the Defendant points out, that in the event this Court finds PRRB's jurisdictional determination erroneous, it must remand the case to PRRB for further determination.  For the purpose of reviewing Defendant's Motion to

4

Dismiss, this Court proceeds, taking the facts in the light most favorable to the Plaintiffs, to determine whether it has the proper subject matter jurisdiction to conduct judicial review of the PRRB's decision, and if it does, whether the relief being requested by the Plaintiffs is available under the Medicare statute.

### Jurisdiction

Judicial review of claims arising under the Medicare Act is limited to the jurisdictional requirements contained in 42 U.S.C. § 405(h).  Shalala v. Ill. Council on Long Term Care, 529 U.S. 1 (2000).  Under the Medicare statutory scheme, this Court's "sole means" of reviewing the PRRB's decision is pursuant to 42 U.S.C. § 1395oo(f).  Saint Vincent Health Ctr. v. Shalala, 937 F. Supp. 496, 503 (D. Pa. 1995).  Specifically, § 1395oo(f)(1) provides, in relevant portion, that "[p]roviders shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary . . . ."  A provider may only obtain judicial review of disputed reimbursement claims after the administrative remedies found in § 1395oo(f)(1) have been exhausted.  Binghamton Gen. Hosp. v. Shalala, 856 F. Supp. 786, 793 (D.N.Y. 1994).  In other words, a provider must first obtain a final administrative decision on their claims before it can file an action in a federal district court.  See Heckler v. Ringer, 466 U.S. 602 (1984).

Under the Medicare reimbursement scheme, an intermediary makes an estimated payment to a provider at least monthly for the costs of the contracted Medicare services.  42 U.S.C. § 1395(g)(a). Within 150 days after the fiscal year has ended, the provider is required to submit a cost report detailing the actual cost of those services and reimbursement received to its intermediary for audit.  42 C.F.R. §§ 413.24(f)(2), 413.350(c), 413.20.  From the cost report, the intermediary determines the actual, rather than the estimated, reimbursement amount to the provider.  42 U.S.C. § 1395g; 1395x(v)(1)(A)(ii); 42 C.F.R. § 413.335.  The intermediary then issues a NPR to the provider, which concludes whether the provider was overpaid or underpaid. 42 C.F.R. §§ 413.60, 405.1803.  The intermediary's NPR is considered final unless it is revised or appealed to the PRRB.  42 C.F.R. § 405.1807.

Within 180 days after the intermediary issues the NPR, a dissatisfied provider may request a hearing before the PRRB.  42 U.S.C. § 1395oo(a); 42 C.F.R. §§ 405.1835, 405.1841. The PRRB's decision is final "unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the

5

Board's decision." § 1395oo(f)(1). Once a final decision has been reached, the provider may file an action to seek judicial review of the final decision in a proper federal district court. Id.

In this case, the dispute arose because the Intermediary disallowed the Providers therapy management reimbursements for FY 1997, an amount estimated to be approximately $601,079.00 (Dkt. 1-1). FCCI, along with the Providers it operated in FY 1997, filed a timely group appeal with PRRB seeking reversal of the Intermediary's disallowances. Subsequently, the Providers and the Intermediary reached a Settlement Agreement, and the PRRB briefly closed the appeal. When the terms under the Settlement Agreement were not fully carried out, the Providers petitioned the PRRB to reinstate the appeal, which the PRRB did on May 2, 2003.

On September 30, 2004, the PRRB rendered a two-part decision where, in part one, it agreed with the Providers' reimbursement claims and reversed the Intermediary's disallowances, but, in part two, declared it lacked jurisdiction to determine "whether the Providers or their successor entities should be paid under a settlement agreement reversing the Intermediary's disallowances" (Dkt. 1-3 at 6). Thereafter, the CMS Administrator declined to review PRRB's decision on the appeal on November 23, 2004 (A.R. 1-2). The Administrator's action made PRRB's decision the final decision of the Secretary. As a result, the Plaintiffs then timely filed this action in this Court seeking judicial review of the PRRB's decision.

This Court finds that, pursuant to § 1395oo(f), the Plaintiffs have exhausted all available administrative remedies, and the PRRB's decision was a "final decision" allowing for judicial review of that decision. In addition, this Court finds that the Plaintiffs properly filed an action seeking judicial review in accordance with the Medicare statute with this Court, and the Court has the proper § 1395oo(f) jurisdictional grant to review the PRRB's decision.

**Scope of Review**

A federal district court has jurisdiction to conduct judicial review of the PRRB's decision if it is deemed a final decision. § 1395oo(f)(1). However, if the PRRB determined that it was without jurisdiction to decide the dispute, "the district court's scope of review could not extend beyond the Board's conclusion that it lacked jurisdiction; that is, the district court could not rule on the merits of the claim over which the Board declared it lacked jurisdiction, only on whether the Board's jurisdictional decision was correct." Saline Community Hospital Asso. v. Secretary of Health & Human Services, 744 F.2d 517, 520 (6th Cir. 1984).

The PRRB's decision regarding its jurisdictional limitation states, in pertinent part:

6

CASE NO. 8:04-CV-02584-T-17TGW

> The Board was established to hear disputes "with respect to [a] cost report" if a provider is dissatisfied "as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this title . . . ." 42 U.S.C. § 1395oo(a)(1) (emphasis added). The Board has the power to affirm, modify or reverse an intermediary's final determination "with respect to a cost report . . ." Given the Intermediary's stipulation, the amount of reimbursement is not in dispute. The only issue remaining is whether the Providers who brought the appeal or successors to the Medicare provider agreements should be paid under the settlement agreement. These are contract disputes outside the limited jurisdiction of the Board.

(Dkt. 1-3 at 5).

This Court agrees with the PRRB that the only issue here is whether the Plaintiffs or the Providers' successors should be paid under the Settlement Agreement. It is evident to this Court that the PRRB has settled the cost report disputes to the full satisfaction of both the Plaintiffs and the Defendant. The complicating factor here involves the bankruptcy of IHS and the Providers. The Parties in that proceeding signed a Stipulation that was approved and adopted in the final bankruptcy court order. In re Integrated Health Servs., Inc., 289 B.R. 32 (Bankr. D. Del. 2003). The PRRB would far exceed its limited jurisdictional power to decide inconsistently with that order. Therefore, this Court finds the PRRB has properly interpreted the applicable Medicare statute and correctly reached its jurisdictional conclusion. Accordingly, it is

**ORDERED** that the Defendant's Motion to Dismiss (Dkt. 25-1) be **GRANTED**, the case be **DISMISSED WITH PREJUDICE**, and the Clerk of the Court be directed to close this case and terminate any pending motions.

7

CASE NO. 8:04-CV-02584-T-17TGW

**DONE and ORDERED** in Chambers, in Tampa, Florida, on this 28th day of July, 2005.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record